UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GEORGE ZAHODNICK,
Plaintiff-Appellant,

v.

INTERNATIONAL BUSINESS MACHINES
CORPORATION; LOCKHEED MARTIN
FEDERAL SYSTEMS, INCORPORATED,                     No. 96-2663
Defendants-Appellees,

and

JOHN MEARS; TED GLATT; BRYAN
TROUTMAN,
Parties in Interest.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Catherine C. Blake and Alexander Williams, Jr., District Judges.
(CA-94-3569-CCB)

Argued: June 6, 1997

Decided: December 22, 1997

Before RUSSELL, WIDENER, and WILKINS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Bradley Scott Weiss, LAW OFFICE OF BRADLEY
SCOTT WEISS, Washington, D.C., for Appellant. Ellen Moran

Dwyer, CROWELL & MORING, L.L.P., Washington, D.C., for Appellees. **ON BRIEF:** Michael A. Lewis, Washington, D.C., for Appellant. Caryl L. Flannery, CROWELL & MORING, L.L.P., Washington, D.C., for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

George Zahodnick filed suit against his employers, International Business Machines Corporation ("IBM") and Lockheed Martin Federal Systems, Incorporated,[1] alleging (1) retaliation under the False Claims Act, 31 U.S.C. § 3730(h) (1994); (2) abusive discharge; and (3) breach of employment contract. Lockheed counterclaimed for breach of nondisclosure agreements. Zahodnick appeals the district court order granting IBM and Lockheed summary judgment on all of Zahodnick's claims and granting Lockheed summary judgment on the counterclaim. The court also enjoined Zahodnick from disclosing confidential information to third parties and ordered him to return all confidential materials to the Defendants. We affirm the district court's judgment.

Zahodnick worked as a managing engineer at IBM and Federal Systems Company ("FSC"), a division of IBM, from 1981 to 1994.[2] The crux of Zahodnick's claims concern events commencing in September 1989 while he was working at FSC's Gaithersburg, Maryland facility. At that time, Zahodnick assembled cost information on a proposal to extend IBM's "DSIS" contract with the Defense Intelligence

_____

**1** In 1996, Loral Federal Systems Company, a defendant below, was acquired by Lockheed Martin and became known as Lockheed Martin Federal Systems, Inc. We refer to the company as"Lockheed."
**2** In 1994, Loral acquired FSC.

2

Agency. During the course of his research, Zahodnick discovered that the "work package number" to which employees working on the project were charging their time was incorrect. The assigned number was actually associated with the DSIS contract rather than the proposal effort. Zahodnick reported the mischarging to his supervisor. Zahodnick claims that shortly after he reported this error, he began receiving negative treatment from the company in the form of unfavorable work performance evaluations, unsuccessful appeals, and denials of transfer requests.

In November 1989, Zahodnick received his annual evaluation of his work performance. Although the review was generally satisfactory, it criticized Zahodnick for his lack of leadership qualities. Zahodnick pursued an appeal under the company's appeal policy and succeeded in having the comments deleted after an investigation. In June 1990, Zahodnick's request for relocation and transfer was denied, but the next year he received a temporary transfer to California. Zahodnick's 1992 evaluations also criticized his lack of communication and leadership skills. Investigators who reviewed Zahodnick's appeal concluded that the evaluations were fair. Zahodnick returned to Maryland in May 1992, after rejecting a permanent position in California.

Over the next two years, Zahodnick continued to receive and unsuccessfully appeal his work evaluations, which he believed did not accurately reflect his true performance. In early 1994, Zahodnick accepted a transfer offer to Springfield, Virginia, where he worked for a short period of time. By late March of 1994, Zahodnick no longer worked for IBM and Lockheed. Zahodnick maintains the company terminated his employment. The record of evidence reveals, however, that Zahodnick voluntarily resigned, and that he brought this suit against the company under the "whistle blower" provision of the False Claims Act only after learning that his voluntary resignation disqualified him from receiving an enhanced separation package and unemployment compensation benefits.

Summary judgment is appropriate when there is no genuine issue of material fact and it appears that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). On summary judgment, all

3

evidence must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Summary judgments are reviewed de novo on appeal. See Higgins v. E.I. DuPont De Nemours & Co., 863 F.2d 1162, 1166-67 (4th Cir. 1988).

The "whistleblower" provision of the False Claims Act prevents the harassment, retaliation, or threatening of employees who assist in or bring qui tam actions. The statute provides:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole . . . .

31 U.S.C. § 3730(h). Thus, an employee must prove that (1) he took acts in furtherance of a qui tam suit; (2) his employer knew of these acts; and (3) his employer discharged him as a result of these acts. See X Corp. v. Doe, 816 F. Supp. 1086, 1095 (E.D. Va. 1993).

Here, there is no evidence that Zahodnick initiated, testified for, or assisted in the filing of a qui tam action during his employment with IBM and Lockheed. In fact, the record discloses that Zahodnick merely informed a supervisor of the problem and sought confirmation that a correction was made; he never informed anyone that he was pursuing a qui tam action. Simply reporting his concern of a mischarging to the government to his supervisor does not suffice to establish that Zahodnick was acting "in furtherance of" a qui tam action. See Robertson v. Bell Helicopter Textron, Inc., 32 F.3d 948, 951 (5th Cir. 1994).

Furthermore, there is no evidence that IBM and Lockheed were aware of Zahodnick's alleged protected activity. Without evidence of any knowledge on the part of IBM and Lockheed, Zahodnick cannot establish the necessary causal connection between the alleged pro-

4

tected activity and Zahodnick's termination of employment four years later. Accordingly, we affirm the district court's grant of summary judgment against Zahodnick on this claim.

We also find that the district court properly granted summary judgment on the abusive discharge claim. Maryland courts recognize a cause of action for abusive discharge available to employees who have been fired in contravention of public policy. See Adler v. American Standard Corp., 432 A.2d 464, 473 (Md. 1981). The action applies when an employee has refused to act in an unlawful manner, attempted to perform a statutorily prescribed duty, exercised a statutory right or privilege, or performed an important public function. See Makovi v. Sherwin-Williams Co., 561 A.2d 179, 182 (Md. 1989). The remedy, however, is unavailable when the "public policy sought to be vindicated by the tort" is expressed in a "statute which carries its own remedy for vindicating that public policy." Chappell v. Southern Md. Hosp., Inc., 578 A.2d 766, 770 (Md. 1990). We conclude that § 3730(h) adequately covers Zahodnick's claim. As the district court noted, even assuming Zahodnick could pursue an abusive discharge claim, he failed to produce any evidence suggesting a causal relationship between his report of the mischarging error and his termination four years later. Accordingly, the district court properly granted Defendants summary judgment on this claim.

With respect to Zahodnick's breach of contract claim, employment is at-will in Maryland unless the employee can show that the contract has "been so modified by the personnel policy statement as to remove it from the full strictures of the common-law rule." Staggs v. Blue Cross of Md., Inc., 486 A.2d 798, 801 (Md. App. 1985). An employer may include a clear disclaimer, however, to avoid contractual liability for a personnel policy. See Bagwell v. Peninsula Reg'l Med. Ctr., 665 A.2d 297, 309 (Md. App. 1995).

In 1993 Defendants provided employees with a handbook bearing a disclaimer. It stated that IBM and FSC "reserve[d] the right to change all their benefits, separation plans, programs, practices, policies and rules at any time." It further stated that "[t]he employment relationship with IBM and Federal Systems Company is at will. This means that the relationship can be ended at any time for any reason by the employee or by IBM or the Federal Systems Company."

5

Because this disclaimer is unambiguous, we find the breach of contract claim without merit.

As to Lockheed's counterclaim for breach of confidentiality, the record discloses that Zahodnick signed two nondisclosure agreements. In these agreements, Zahodnick agreed not to disclose confidential information to anyone outside of IBM and to return all IBM property to IBM when he left IBM's employment. Zahodnick retained confidential materials belonging to IBM after termination of his employment and forwarded those documents to his counsel without IBM's consent. Under such circumstances, the district court did not err either in enjoining Zahodnick from disclosing Lockheed's confidential materials to third parties or in ordering Zahodnick to return all confidential materials to Lockheed. Accordingly, we affirm the district court's order.

<u>AFFIRMED</u>

6