UNITED STATES of America ex rel. Robert D. ACKLEY, Plaintiff,

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION, et al., Defendants.

No. Civ. PJM 97–3189.

United States District Court, D. Maryland, Southern Division.

July 27, 2000.

elements.

Thomas Earl Patton, Walter G. Birkel, Tighe, Patton, Tabackman & Babbin, Washington, DC, Dean Francis Pace, Pace & Rose, Los Angeles, CA, for Plaintiff.

Kathryn D. Kirmayer, Kimberly King Hartwell, Michele T. St. Mary, Thomas P. Humphrey, Crowell & Moring, Washington, DC, for Defendants.

## OPINION

MESSITTE, District Judge.

This is a relator's suit under the *qui tam* provisions of the False Claims Act (FCA), 31 U.S.C. § 3729 *et seq.* Following the Court's Order granting Defendants' Motion to Dismiss Counts I and II of Plaintiff's Second Amended Complaint,[1] Defendants were directed to file pleadings responsive to Count III, the only count remaining in the Second Amended Complaint, which alleges retaliation in violation of the FCA, 31 U.S.C. § 3730(h). Defendants have responded by filing a partial Motion to Dismiss Count III,[2] and alternatively ask the Court to Strike significant portions of the Second Amended Complaint. Ackley has filed an opposition, to which Defendants have replied. Having considered the pleadings, the Court will DENY the Motion to Dismiss and the Motion to Strike.

## I.

Recapping the facts:

Plaintiff Robert D. Ackley is a former employee of Defendant International Business Machines Corporation ("IBM") and a current employee of Defendant Lockheed Martin Corporation ("Lockheed").[3] IBM, a multinational corporation with its principal place of business in Armonk, New York, is the world's largest supplier of advanced information processing technology. Lockheed, also a multinational corporation, has its principal place of business in Bethesda, Maryland, and is one of the world's largest defense contractors.

Between 1987 and October 1993, Ackley worked as a Contract Program Manager on IBM's Space Station Freedom ("SSF") Project at its FSC facility in Owego, New York.[4] As such, Ackley was responsible for ensuring the integrity of IBM's time and cost-charging practices on the Project. In or around April 1993, he became concerned over certain developments he says were taking place within his area of responsibility. Specifically, in that month he reported to his superiors that a number of IBM employees were charging time to the SSF account that had in fact been spent on matters unrelated to the Project. Ackley says that, although IBM conducted an investigation based on his report, the investigation was at best superficial. Moreover,

---

1. *See United States ex rel. Ackley v. International Business Machs. Corp.,* 76 F.Supp.2d 654 (D.Md.1999).

2. The Court understands Defendants' Motion to seek dismissal of Count III in its entirety as it relates to Defendant International Business Machines Corporation, but only in part as to Defendant Lockheed Martin Corporation; that is, Defendants apparently concede that if the Court were to grant the Motion, Count III would still survive against Lockheed insofar as the Count alleges retaliatory acts occurring on or after March 3, 1997.

3. Lockheed is the successor in interest to Federal Systems Company ("FSC"), the wholly owned division through which IBM secured contracts from the United States and the National Aeronautical and Space Administration ("NASA").

4. The SSF project was a $12 billion, 30 year undertaking directed toward the launching of an orbiting research laboratory capable of providing scientific knowledge about how humans might live and work in space for extended periods of time.

IBM then undertook a "sham" investigation of sexual harassment charges against Ackley himself that, in October 1993, resulted in his demotion from Contract Program Manager on the SSF Project to Program Manager for Business Acquisition.

In March 1994 IBM sold FSC to Loral Federal Systems Company ("Loral"),[5] at which point Ackley ceased to be IBM's employee and became Loral's. In April 1996, Loral was acquired by Lockheed and Ackley became a Lockheed employee. Ackley alleges that IBM retaliated against him by pursuing the sham sexual harassment investigation and by demoting him, as well as by denying him relocation benefits at the time of the sale to Loral. Ackley also says that Lockheed, through numerous acts of harassment, continued to retaliate against him.

The present action began on September 7, 1995, when Ackley filed suit in the United States District Court for the Eastern District of Pennsylvania. His initial Complaint, which named only IBM as defendant, alleged two causes of action: submission of false claims in violation of 31 U.S.C. § 3729(a)(1) and retaliation against an employee in violation of Section 3730(h). After the United States declined to intervene in the suit, Ackley filed a First Amended Complaint in the Pennsylvania federal court, still naming only IBM as defendant, but adding a common law cause of action for wrongful constructive termination. On March 2, 1998, after the case was transferred to this Court, Ackley filed a Second Amended Complaint, adding Lockheed as defendant as to the retaliation claim, and dropping the constructive termination claim against IBM, but adding a claim against IBM for use of false records and statements in violation of 31 U.S.C. § 3729(a)(2).

The false claims and false records claims under Section 3729(a) are now out of the case by reason of the Court's Order of November 17, 1999. In the present Mo-

tion, IBM asks the Court to dismiss the retaliation count against it for failure to state a claim upon which relief can be granted, arguing (1) that Ackley has not alleged that he took an action "in furtherance of" a *qui tam* suit during his employment at IBM or that IBM was aware of any such action and (2) that the retaliation claim is otherwise time-barred in its entirety. Lockheed argues that the retaliation claim against it is time-barred insofar as retaliatory acts prior to March 3, 1997 are alleged and asks that any such claims for that period be dismissed. Alternatively, both Defendants ask the Court to strike "significant portions" of the Second Amended Complaint as immaterial in light of the Court's previous dismissal of Counts I and II and the anticipated dismissal of Count III insofar as it relates to IBM.

## II.

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) will be granted if the allegations of the complaint, taken as true and construed in the light most favorable to the plaintiff, fail as a matter of law to state a claim for which relief can be granted. *See Carter v. Burch,* 34 F.3d 257, 261 (4th Cir.1994); *Ammer v. United States,* 881 F.Supp. 1007, 1010 (D.Md.1994), *aff'd,* 56 F.3d 60 (4th Cir.1995). A claim is not to be dismissed " 'unless it appears beyond [ ] doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Comet Enterprises Ltd. v. Air-A-Plane Corp.,* 128 F.3d 855, 860 (4th Cir.1997) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

## III. *Elements of a Retaliation Claim under the FCA*

### A) The Issues

The FCA protects whistle-blowers against retaliation by their employers:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated

---

5. Loral is not a party to this action.

against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

31 U.S.C.A. § 3730(h) (West Supp.1999).

■ To state a claim for retaliation under Section 3730(h), a plaintiff must allege that (1) he took an action "in furtherance" of a *qui tam* suit, *i.e.*, engaged in "protected activity," (2) his employer knew of this action, and (3) his employer retaliated against him as a result of the action. *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 866 (4th Cir.1999) (citing *Zahodnick v. International Business Machs. Corp.*, 135 F.3d 911, 914 (4th Cir. 1997)); *see also United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1522 (10th Cir.1996). Defendants contend that Ackley has failed to allege that he engaged in protected activity while employed by IBM or that IBM was aware of any such activity before it supposedly retaliated against him. Ackley disagrees and so does the Court.

**B) The "action in furtherance" requirement**

■ Ackley says he acted in furtherance of a *qui tam* suit during his employment with IBM because: (1) he took "all available steps" to report to senior management that, by deliberately under-reporting certain indirect costs otherwise allocable to the SSF Project (a substantial portion of which would be unreimbursable by the Government), IBM was engaging in the "fraudulent practice" of charging the Government a higher fee on the SSF Project

than would otherwise be due [Second Amended Complaint ¶¶ 116–121],[6] and (2) he took advantage of IBM's "Open Door" reporting policy by contacting Anthony J. Macina, Vice President and General Manager of IBM's FSC division, in April 1993 and advising him that certain employees, under the direction of senior management, were engaging in "time card fraud" as part of an "overall scheme ... to unilaterally expand IBM's participation and profit" by charging time spent on other projects to the SSF Project [Second Amended Complaint ¶¶ 12, 123–128].

Despite this, Defendants maintain that Ackley does not fall within the protection of the statute. They cite *Zahodnick v. International Business Machines Corporation, supra*, in which a Fourth Circuit panel rejected a plaintiff's claim that he acted "in furtherance of" a *qui tam* action where the sole evidence was that he had informed his supervisor that other employees were incorrectly charging time spent on one project to another, holding that "[s]imply reporting his concern of a mischarging to the government to his supervisor does not suffice to establish that Zahodnick was acting 'in furtherance of' a *qui tam* action." 135 F.3d at 914. Ackley, in response, cites *Eberhardt v. ·Integrated Design & Construction, Incorporated, supra*, in which another Fourth Circuit panel stated that a plaintiff's internal investigation of fraud constituted protected activity because it "reasonably could have led to the filing of a *qui tam* action." 167 F.3d at 867. Defendants attempt to distinguish *Eberhardt* on the ground that the plaintiff in that case had conducted an internal investigation whereas here Ackley says only that he made reports to his superiors and does not claim to have engaged in "predicate investigatory conduct."

The Court finds Defendants' arguments unpersuasive. Nothing in *Eberhardt* sug-

---

6. This was accomplished, according to Ackley, by supervisors who directed certain exempt employees not to record overtime spent on activities related to new business acquisition, such as the preparation of bids and proposals, the cost of which was not reimbursable and the reporting of which would have reduced the fee due to IBM on the SSF Project. Second Amended Complaint ¶¶ 116–121.

gests that the "action in furtherance" requirement can only be satisfied if an employee's report is based on an internal investigation. Indeed, such a distinction would make little sense given the purpose of Section 3730(h), which is to encourage employees to disclose fraud and protect them from retaliation when they do so. If that is the purpose, it should not matter whether the employee discovers fraud on his own or learns of it from another. *See* H.R.REP. No. 99–660, at 23 (1986); S.REP. No. 99–345, at 34 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5299. Nor is the language of Section 3730(h) by any fair construction all-inclusive. Although the statute expressly lists "investigation for" a *qui tam* action (and does not list "reporting fraud") among its examples of protected activity, the legislative history indicates that "[p]rotected activity should ... be interpreted broadly." S.REP. No. 99–345, at 35 (1986), *reprinted* in 1986 U.S.C.C.A.N. 5266, 5300; *see United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 741 (D.C.Cir.1998) (noting that statute's examples are not "intended ... to encompass the entire category"); *United States ex rel. McKenzie v. Bell-South Telecommunications, Inc.*, 123 F.3d 935, 944 (6th Cir.1997) (same). Accordingly, a number of courts have held that just the sort of activity Ackley says he engaged in in the present case—internal reporting of false or fraudulent claims—qualifies as activity protected by Section 3730(h). *See, e.g., McKenzie*, 123 F.3d at 944; *Ramseyer*, 90 F.3d at 1523 (recognizing that "intracorporate complaints may fall within the protective scope of section 3730(h)"); *see also Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir.1994) (noting that "several district courts have held that § 3730(h) protects internal whistleblowers," and citing *Clemes v. Del Norte County Unified Sch. Dist.*, 843 F.Supp. 583, 595–96 (N.D.Cal.1994), *United States ex rel. Kent v. Aiello*, 836 F.Supp. 720, 723–24 (E.D.Cal.1993), and *Neal v. Honeywell, Inc.*, 826 F.Supp. 266, 270–72

(N.D.Ill.1993), *aff'd*, 33 F.3d 860 (7th Cir. 1994)).

*Zahodnick* is not inconsistent with these holdings. There the subject matter of the employee's report to his supervisor was not fraud but rather, as the Fourth Circuit panel at one point characterized it, a "mischarging error." 135 F.3d at 914. *Eberhardt* establishes the contrast. If the employee's internal report pertains to fraud as opposed to inadvertent error, a *qui tam* action is "a 'distinct possibility'" at the time the report is made. *Eberhardt*, 167 F.3d at 867 (quoting *Neal v. Honeywell, Inc.*, 33 F.3d 860, 864 (7th Cir.1994)). But in *Zahodnick*, where the report might just as well have been calling attention to "mischarging" that was inadvertent as opposed to mischarging that was false or fraudulent, the possibility of a *qui tam* suit was much less than "distinct."

In the Court's view, therefore, if Ackley's alleged internal disclosures were identifiable as disclosures of fraud or falsity, they would qualify as protected activity. The Court finds they were arguably identifiable as such. Ackley says that he reported to management that certain supervisors had expressly directed exempt employees not to record overtime spent on unreimbursable activities so as to "inflate the fee that IBM could recover from the Government" and that he was "shocked and outraged" by this directive. Second Amended Complaint, ¶ 121. He says he availed himself of IBM's Open Door disclosure policy to tell Anthony Macina that "various work teams had been pressured to charge indirect and other unrelated time to the Space Station account" and that senior managers were engaged in a "*scheme* ... to unilaterally expand IBM's participation and profit on the Space Station project." Second Amended Complaint, ¶¶ 126, 127 (emphasis added). These allegations, taken together, could reasonably be understood to be allegations of fraud or falsity, not merely suggestions of mistaken mischarging. Assuming the trier of fact believes the communications

with Macina and IBM management took place, the trier of fact could also fairly conclude that a *qui tam* action was "a distinct possibility," hence that Ackley's action was taken "in furtherance of" a *qui tam* suit.

### C) The Notice Requirement

■ IBM contends that even if Ackley has adequately alleged that he acted in furtherance of a *qui tam* suit while employed by it, he has failed to plead that IBM was aware of his protected conduct. Specifically, IBM argues that inasmuch as one of Ackley's responsibilities as SSF Manager was to ensure that his work teams performed within the monetary confines of the government contract, he comes within the *Eberhardt* rule that "an employee tasked with the internal investigation of fraud ... cannot bring a section 3730(h) action for retaliation unless the employee puts the employer on notice that a *qui tam* suit ... is a reasonable possibility." 167 F.3d at 868. Ackley concedes the applicability of this additional requirement, but submits that his allegations are sufficient.

Again the Court agrees with Ackley. As stated in *Eberhardt*, an employer may be put on notice by "any action which a factfinder reasonably could conclude would put the employer on notice that litigation is a reasonable possibility" and "[s]uch actions would include, *but are not limited to*, characterizing the employer's conduct as illegal or fraudulent or recommending that legal counsel become involved." 167 F.3d at 868 (emphasis added). There is no reason to suppose that the same reports of fraudulent or false mischarging that could be deemed to represent a "distinct possibility" of a *qui tam* suit for purposes of satisfying the "in furtherance" requirement could not also establish a "reasonable possibility" of such a suit so as to take Ackley outside the *Eberhardt* rule. In both cases, the question is whether what Ackley told his superiors was sufficiently suggestive of fraud or falsity that IBM should have reasonably understood the

possible follow-on of *qui tam* litigation. *Id.* Taking, as the Court must, Ackley's words in the most favorable light, they could support a reasonable factfinder in concluding that IBM was on notice that *qui tam* litigation was "a reasonable possibility."

### IV. *The Statute of Limitations in Retaliation Claims under the FCA*

### A) The FCA's limitations period

The sole limitations provision relative to the bringing of civil actions under the FCA reads:

> A civil action under section 3730 may not be brought (1) more than 6 years after the date on which the violation of section 3729 is committed, or (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed.

31 U.S.C.A. § 3731(b) (West Supp.1999). Since a retaliation action is one brought "under section 3730(h)," 31 U.S.C. § 3730(h), Ackley argues that the six-year limitations period plainly applies. *See Neal v. Honeywell, Inc.*, 33 F.3d 860, 865–66 (7th Cir.1994); *Grand ex rel. United States v. Northrop Corp.*, 811 F.Supp. 333, 336 (S.D.Ohio 1992). Defendants, armed with authority to the contrary, point out the irrationality of a six-year limitations period that would date from "the date on which the violation of section 3729 [the false claims section] is committed." *See United States ex rel. Lujan v. Hughes Aircraft Co.*, 162 F.3d 1027, 1034–35 (9th Cir.1998); *United States ex rel. Truong v. Northrop Corp.*, No. CV 88–967 MRP, 1991 WL 496831, at *1–3 (C.D.Cal. Nov. 26, 1991); *cf. Childree v. UAP/GA AG CHEM, Inc.*, 92 F.3d 1140, 1143, 1146 (11th Cir.1996) (noting that the statute of limitations had run on any *qui tam* action

plaintiff might have brought under the other provisions of Section 3730, but concluding that her Section 3730(h) retaliation claim could go forward). An employee, they argue, could be retaliated against even if false claims were never actually made or not proven or if the timing of their occurrence were indeterminate. What, in those instances, would be the date on which the six-year clock on a retaliation claim might begin to run? On the other hand, an employee could be retaliated against more than six years after the violation of Section 3729, whether the violation occurred or not. By Ackley's argument, limitations would have run on the claim. Accordingly, say Defendants, the only sensible limitations period has to mark from the date of the supposed retaliatory act itself.

On the premise that Congress did not specify the limitations period for retaliation claims in the statute, Defendants would have the Court apply the "most closely analogous" statute of limitations under state law. *Wilson v. Garcia*, 471 U.S. 261, 266–67, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Lujan*, 162 F.3d at 1035 (quoting *Reed v. United Transp. Union*, 488 U.S. 319, 323, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989)); *McCullough v. Branch Banking & Trust Co.*, 35 F.3d 127, 129 (4th Cir.1994). And reasoning that Maryland courts would apply the *lex loci delicti* rule to tort actions, see *Hauch v. Connor*, 295 Md. 120, 123–24, 453 A.2d 1207, 1209–10 (1983), Defendants arrive at Ackley's work site in the State of New York which, as it happens, has a one-year limitations period for whistle-blower retaliation claims. N.Y.Lab.Law § 740(4) (McKinney 1988). Defendants thus conclude that Ackley's claim of retaliation against IBM, first filed in September 1995, is barred as to any action pertaining to his employment with IBM, which ended in March 1994 when IBM sold out to Loral. By a parity of reasoning, his claim of retaliation against Lockheed, which was first made on March 2, 1998, can cover only the period from March 2, 1997 forward.

While an exegesis of Section 3731(b) as it relates to retaliation claims would no doubt be a challenging undertaking, in the Court's view it is unnecessary. Assuming without deciding that Defendants are correct that the six-year limitations period of the statute does not apply to retaliation claims, the period that would apply in the Court's view would still be three years, not one; hence all of Ackley's retaliation claims would survive intact. The Court explains.

**B) The Applicable Statute of Limitations**

The Court will assume with Defendants that, in the absence of clear specification in the FCA as to the limitations period for the filing of retaliation claims, choice of law analysis is required. But the Court does not find itself transported to New York State by reason of Maryland's *lex loci delicti* rule, as Defendants suggest. Instead, taking a very different approach, the Court concludes that Maryland's own period of limitations for tort actions—which is three years, not one—applies.

To begin, there is the difference between choice of law rules pertaining to statutes of limitations as they apply in actions in federal courts based on state causes of action (which is to say diversity cases) and those that apply in actions in federal courts to enforce federally created rights, such as is the case here. In the former, the forum state's choice of law rules must be applied by the federal court. *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), *overruled on other grounds by Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). But in the latter, when a federal statute contains no statute of limitations, the rule is that the federal court—applying *federal* choice of law rules—will apply the most closely analogous statute of limitations of the *forum* state. *See Sandberg v. KPMG Peat Mar-*

*wick, L.L.P.*, 111 F.3d 331, 333 (2d Cir. 1997); *Eichleay Corp. v. International Ass'n of Bridge, Structural, & Ornamental Iron Workers*, 944 F.2d 1047, 1062 (3d Cir.1991); *Vigman v. Community Nat'l Bank & Trust Co.*, 635 F.2d 455, 459 (5th Cir.1981); *Champion Int'l Corp. v. United Paperworkers Int'l Union*, 779 F.2d 328, 332–34 (6th Cir.1985); *Teamsters Local No. 579 v. B & M Transit, Inc.*, 882 F.2d 274, 276 (7th Cir.1989); *Kansas Pub. Employees Retirement Sys. v. Reimer & Koger Assocs., Inc.*, 61 F.3d 608, 611 (8th Cir.1995); *International Union, United Plant Guard Workers of Am. v. Johnson Controls World Servs., Inc.*, 100 F.3d 903, 906 (11th Cir.1996); *Forrestal Village, Inc. v. Graham*, 551 F.2d 411, 413 (D.C.Cir. 1977). *But see Held v. Manufacturers Hanover Leasing Corp.*, 912 F.2d 1197, 1202–03 (10th Cir.1990) (applying Section 142 of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS (2d ed.1980) and choosing New York law over law of the forum); *Chung v. Pomona Valley Community Hosp.*, 667 F.2d 788, 791 (9th Cir.1982)

(borrowing "the limitation period set by the state most connected with the federal claim"); *cf. Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 355, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) (usual rule is that court borrows the most analogous "local" time limitation).[7]

■ There appears to be but one "closely circumscribed and narrow exception to [the] general rule" that adopts the state limitations period and that is when the state's period would frustrate or interfere with the implementation of national policies or be at odds with the purpose or operation of substantive federal law. *North Star Steel Co. v. Thomas*, 515 U.S. 29, 34, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995).

The Court, then, elects to be guided by this federal choice of law rule.[8] So guided, the Court looks to the applicable limitations period under Maryland law with two objectives in mind: (1) to select the state-law cause of action most analogous to the

---

**7.** This is not to say that the authority within each of the above-referenced circuits is uniform. Fifth Circuit panels have on occasion borrowed limitations provisions from the state where the claim arose, *see Sewell v. Grand Lodge of International Association of Machinists & Aerospace Workers*, 445 F.2d 545, 549 (5th Cir.1971), while at least one Ninth Circuit panel has stated that courts should look to the law of the forum state, *see Trotter v. International Longshoremen's & Warehousemen's Union, Local 13*, 704 F.2d 1141, 1143 n. 2 (9th Cir.1983). The Sixth Circuit recently approved application of a state choice of law rule which resulted in application of a limitations provision from outside the forum state. *See Caproni v. Prudential Securities, Inc.*, 15 F.3d 614, 617–18 (6th Cir.1994).

The Fourth Circuit, while never explicitly stating the rule, has on several occasions nevertheless approved district court decisions borrowing limitations provisions from the forum state. *See Reinbold v. Evers*, 187 F.3d 348, 359 n. 10 (4th Cir.1999); *Shofer v. Hack Co.*, 970 F.2d 1316, 1319 (4th Cir.1992); *Dameron v. Sinai Hosp. of Baltimore, Inc.*, 815 F.2d 975, 981 (4th Cir.1987). And see *O'Hara v. Kovens*, 625 F.2d 15, 17 (4th Cir. 1980), in which Judge Haynsworth held that

the timeliness of a suit filed under Section 10(b) of the Securities Exchange Act of 1934, which does not have its own statute of limitations, "is determined by reference to the *forum* state's law of limitations" (emphasis added). This holding was later abrogated by the Supreme Court's decision in *Lampf* that courts should look to federal law in determining the appropriate limitations period for Section 10(b) actions. 501 U.S. at 361, 111 S.Ct. 2773.

**8.** Whether the Court adopts Maryland's statute of limitations because federal choice of law rules dictate it or whether it looks to Maryland choice of law rules to determine the issue, the result is the same. Assuming Maryland would recognize New York as the place of the wrong, *see Hauch v. Connor, supra,* and would apply New York's substantive law, Maryland courts would nevertheless characterize limitations as a procedural matter governed by the law of the forum—Maryland—not by the law of the place of the wrong. *General Ins. Co. of Am. v. Interstate Serv. Co.*, 118 Md.App. 126, 130, 701 A.2d 1213, 1215 (1997); *see Black v. Leatherwood Motor Coach Corp.*, 92 Md.App. 27, 37, 606 A.2d 295, 300 (1992); *see also Grombach v. Oerlikon Tool & Arms Corp. of Am.*, 276 F.2d 155, 164 (4th Cir.1960).

federal claim and the limitations provision applicable to it; and (2) to determine whether application of that period comports with the federal statute and its underlying policies. *McCullough v. Branch Banking & Trust Co.*, 35 F.3d 127, 129 (4th Cir.1994); *Bernard v. School Bd. of the City of Norfolk*, 58 F.Supp.2d 669, 672 (E.D.Va.1999); *see North Star Steel*, 515 U.S. at 34, 115 S.Ct. 1927 (inconsistency of state limitations period with policies underlying federal statute is limited exception to reliance on state law as the "lender of first resort").

◼ The Maryland Code contains no precise analogue to the FCA.[9] Under the circumstances, the Court must first "characterize the essence" of Ackley's claim, then "decide which state statute provides the most appropriate limiting principle." *Wilson v. Garcia*, 471 U.S. 261, 268, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).

◼ Again, existing case authority points the way. Courts that have applied state limitations statutes to Section 3730(h) claims have chosen wrongful discharge from employment as the proper analogue to retaliation. *See Lujan*, 162 F.3d at 1035; *Truong*, 1991 WL 496831, at *3; *cf. Giuffre v. Delta Air Lines, Inc.*, 746 F.Supp. 238, 241 (D.Mass.1990) (borrowing state limitations period for tort actions where plaintiff alleged retaliation in violation of ERISA). This Court has no reason to find otherwise. Since Maryland recognizes the action of wrongful discharge, *Adler v. American Standard Corporation*, 291 Md. 31, 43, 432 A.2d 464, 471 (1981), characterizing it as a tort, *Molesworth v. Brandon*, 341 Md. 621, 636–37, 672 A.2d 608, 616 (1996); *Makovi v. Sherwin–Williams Company*, 316 Md. 603, 605, 626, 561 A.2d 179, 180, 189 (1989); *Miller v. Fairchild Industries, Inc.*, 97 Md.App. 324, 335, 629 A.2d 1293, 1298 (1993), the

9. A cause of action under Maryland law that arguably resembles a Section 3730(h) claim arises under Section 5–604 of the Maryland Code's Labor and Employment article, which prohibits retaliatory action against employees who aid in the enforcement of the State's Occupational Safety and Health Act, and which authorizes employees who are retaliated against to "submit to the Commissioner [of Labor and Industry] a written complaint that alleges the discrimination and includes the signature of the employee" within thirty days of the alleged discriminatory act. MD.CODE ANN., LAB. & EMPL. § 5–604(c) (1999). As the Supreme Court has recognized, however, there are "functional differences" between administrative actions and court proceedings, including the much greater degree of preparation required before filing an action in court, that make it inappropriate to borrow limitations provisions from state statutes like Section 5–604 providing for fast-track administrative proceedings. *Burnett v. Grattan*, 468 U.S. 42, 50–52, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984); *see also McNutt v. Duke Precision Dental & Orthodontic Labs., Inc.*, 698 F.2d 676, 679 (4th Cir.1983); *Kohler v. Shenasky*, 914 F.Supp. 1206, 1210, 1211 (D.Md.1995). Nevertheless, at least one court in this district has applied a state limitations provision for initiating administrative proceedings to a federal cause of action. *See Carrozza v. Howard County, Md.*, 847 F.Supp. 365, 367 (D.Md. 1994) (applying six-month period provided in

Md.Ann.Code art 49B, § 9A(a) to Rehabilitation Act claim), *aff'd*, 45 F.3d 425 (4th Cir. 1995). In so doing, the *Carrozza* court relied on *Wolsky v. Medical College of Hampton Roads*, 1 F.3d 222, 224 (4th Cir.1993), in which the Fourth Circuit applied the one-year limitations period for claims under the Virginia Rights of Persons with Disabilities Act to the plaintiff's Rehabilitation Act claim rather than Virginia's limitations provision for personal injury actions. *See also McCullough*, 35 F.3d at 130 (applying limitations provision from North Carolina act protecting disabled individuals to Rehabilitation Act claim). The Court notes that in both *McCullough* and *Wolsky*, the Fourth Circuit relied heavily on the fact that the state acts were patterned on and specifically intended to create a state counterpart to the Rehabilitation Act. 35 F.3d at 130; 1 F.3d at 224; *see Kohler*, 914 F.Supp. at 1211. Maryland's Occupational Safety and Health Act was modeled after the federal Occupational Safety and Health Act, not the FCA. *See Commissioner of Labor & Indus. v. Bethlehem Steel Corp.*, 344 Md. 17, 30, 684 A.2d 845, 851 (1996). In addition, unlike Section 5–604(c), the state statutes at issue in *Wolsky* and *McCullough* provided for direct causes of action in the state courts. *See* N.C.GEN.STAT. § 168A–12; VA CODE ANN. § 51.5–46(B). The Court remains satisfied that the limitations provision in Section 5–604(c) is not analogous to a claim of retaliation under the FCA.

Court concludes that Ackley's Section 3730(h) claim of retaliation should be characterized as a tort for purposes of limitations-borrowing analysis.

As for the general limitations period applicable to torts in Maryland, it is three years. MD.CODE ANN., CTS. & JUD.PROC. § 5–101 (1998); *see Phipps v. General Motors Corp.,* 278 Md. 337, 350, 363 A.2d 955, 962 (1976) (Section 5–101 provides the "general tort limitations period"). Since no more specific limitations provision of the Code matches this claim,[10] the Court holds that this three-year period "provides the most appropriate limiting principle" in this case. *Wilson,* 471 U.S. at 267, 105 S.Ct. 1938; *see Allen v. Bethlehem Steel Corp.,* 76 Md. App. 642, 649, 547 A.2d 1105, 1108 (1988) (despite similarity between false light and libel claims, Section 5–101—not Section 5–105—applies to false light claims because "[l]imitation statutes are generally strictly construed").

The Court finds Maryland's three-year period consistent with Section 3730(h) and the general policies underlying it. The legislative history of Section 3730(h) establishes a two-fold policy: (1) protecting whistle-blowers against discrimination by their employers and (2) promoting anti-fraud enforcement efforts. *See, e.g.,* H.R.REP. No. 99–660, at 23 (1986); S.REP. No. 99–345, at 34 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5299. Nothing in the legislative history suggests that Congress intended these claims to proceed on an especially fast track, which it might have easily indicated in the statute had it cared to. Other federal legislation, protective of personal rights but nonspecific as to the limitations period and embracing various state laws, such as the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983, contemplate actions being brought with various state limitations periods up to three years. When shorter periods have been

intended, Congress has not hesitated to say so. *See, e.g.,* Energy Reorganization Act, 42 U.S.C. § 5851(b)(2)(A) (1995) (180 days); Clean Air Act, 42 U.S.C. § 7622(b)(1) (1995) (thirty days). Nor is the balance that three years strikes between the time for an employee to present a claim and the right of an employer to be free from stale claims in any way inappropriate. The search for truth if the three-year period is acknowledged will not "be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise." *United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). The Court is satisfied that application of Section 5–101's three-year limitations period to Ackley's Section 3730(h) claims is in harmony with the federal statute and the policies underlying it.

Since Ackley alleges that IBM began retaliating against him after his Open Door disclosures in April 1993, and that Lockheed's retaliation began immediately upon its acquisition of Loral in April 1996, his retaliation claim filed against IBM on September 7, 1995 and his claim filed against Lockheed on March 2, 1998 were filed well within the limitations period made applicable by choice of law analysis.

## V.

■ Fed.R.Civ.P. 12(f) authorizes the Court "to order stricken from any pleading any … redundant, immaterial, impertinent, or scandalous matter." Defendants contend that the paragraphs in Ackley's Second Amended Complaint relating to Counts I and II, which the Court has dismissed, are immaterial to his retaliation claims and should be stricken. Ackley says that the allegations, which pertain primarily to Defendants' alleged false claims and statements, are material to De-

---

**10.** The only other Maryland provisions applicable to torts are Section 5–105, which provides a one-year limitations period for assault, libel, or slander; Section 5–108, which pro- vides a twenty-year limitations period for injuries occurring after improvement to realty; and Section 5–109, which provides a five-year limitations period for medical torts.

fendants' motives and intent in retaliating against him. The Court agrees with Ackley.

 Rule 12(f) motions are not favored and will be denied unless the matter under challenge has "no possible relation to the controversy and may prejudice the other party." *Steuart Inv. Co. v. Bauer Dredging Constr. Co.,* 323 F.Supp. 907, 909 (D.Md.1971); *see also Maryland State Conference of NAACP Branches v. Maryland Dep't of State Police,* 72 F.Supp.2d 560, 569 (D.Md.1999); *National Credit Union Admin. v. First Union Capital Markets Corp.,* 189 F.R.D. 158, 162, 163 (D.Md.1999); *cf. Rackley v. Board of Trustees of Orangeburg Regional Hosp.,* 310 F.2d 141, 143 (4th Cir.1962) (holding that district court should not have stricken paragraph regarding contribution of federal funds to hospital because "it did not conclusively appear that this circumstance was not germane to the claimants' case"); *Hare v. Family Publications Serv., Inc.,* 342 F.Supp. 678, 685 (D.Md.1972) (refusing to strike material because "[t]here is a possibility that [it] may be relevant to this suit," and striking other material that was "absolutely irrelevant"); *see generally* 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL 2D § 1382, at 683–90 & nn. 8, 10 (1990 & 2000 Supp.). In order to understand how and when Ackley may have been retaliated against (if in fact he was), it would undoubtedly be helpful to know why the retaliation occurred. What was he complaining about, when, and to whom? The challenged allegations remain relevant to these considerations and will not be redacted.

## VI.

The Court DENIES Defendants' Motion to Dismiss Count III or, alternatively, to Strike. A separate Order will be entered.

### *ORDER*

For the reasons set forth in the accompanying Opinion, it is this 27th day of July, 2000

ORDERED:

(1) Defendants' Motion to Dismiss Count III in Part under Fed.R.Civ.P. 12(b)(6) is DENIED;

(2) Defendants' Motion to Strike significant portions of the Second Amended Complaint is DENIED;

(3) Defendants shall file pleadings responsive to the surviving portions of the Second Amended Complaint by no later than August 18, 2000.