Reversed by Supreme Court, June 20, 2005
Certiorari granted, January 7, 2005

FILED:  May 25, 2004

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 03-1122
(CA-01-19-2)

———————————

UNITED STATES OF AMERICA ex rel. KAREN T.
WILSON,

Plaintiff - Appellant,

versus

GRAHAM COUNTY SOIL & WATER CONSERVATION
DISTRICT; CHEROKEE COUNTY SOIL & WATER
CONSERVATION DISTRICT; RICHARD GREENE;
WILLIAM TIMPSON; KEITH ORR; RAYMOND WILLIAMS;
DALE WIGGINS; GERALD PHILLIPS; ALLEN DEHART;
LLOYD MILLSAPS; JERRY WILLIAMS; BILLY BROWN;
LYNN CODY; BILL TIPTON; C. B. NEWTON; EDDIE
WOOD; GRAHAM COUNTY,

Defendants - Appellees,

and

GRAHAM COUNTY BOARD OF COUNTY COMMISSIONERS;
CHEROKEE COUNTY BOARD OF COUNTY
COMMISSIONERS; CHERIE GREENE; RICKY STILES;
BETTY JEAN ORR; JOYCE LANE; JIMMY ORR; EUGENE
MORROW; CHARLES LANE; CHARLES LANEY; GEORGE
POSTELL; LLOYD KISSLEBURG; TED ORR; BERNICE
ORR; JOHN DOE; JOHN DOE CORPORATIONS, and
defendant; GOVERNMENT ENTITIES 1-99

Defendants.

———————————

O R D E R

———————————

The court further amends its opinion filed April 29, 2004, and

amended May 10, 2004, as follows:

On page 11, footnote 10, line 2, "Post at 18." is added after the first sentence. On page 12, line 1 of the footnote, "Certainly, arrangement that follows" is corrected to read "Certainly, the arrangement that follows."

For the Court - By Direction,


/s/ Patricia S. Connor

Clerk

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 03-1122
(CA-01-19-2)

UNITED STATES OF AMERICA ex rel. KAREN T.
WILSON,

Plaintiff - Appellant,

versus

GRAHAM COUNTY SOIL & WATER CONSERVATION
DISTRICT; CHEROKEE COUNTY SOIL & WATER
CONSERVATION DISTRICT; RICHARD GREENE;
WILLIAM TIMPSON; KEITH ORR; RAYMOND WILLIAMS;
DALE WIGGINS; GERALD PHILLIPS; ALLEN DEHART;
LLOYD MILLSAPS; JERRY WILLIAMS; BILLY BROWN;
LYNN CODY; BILL TIPTON; C. B. NEWTON; EDDIE
WOOD; GRAHAM COUNTY,

Defendants - Appellees,

and

GRAHAM COUNTY BOARD OF COUNTY COMMISSIONERS;
CHEROKEE COUNTY BOARD OF COUNTY
COMMISSIONERS; CHERIE GREENE; RICKY STILES;
BETTY JEAN ORR; JOYCE LANE; JIMMY ORR; EUGENE
MORROW; CHARLES LANE; CHARLES LANEY; GEORGE
POSTELL; LLOYD KISSLEBURG; TED ORR; BERNICE
ORR; JOHN DOE; JOHN DOE CORPORATIONS, and
defendant; GOVERNMENT ENTITIES 1-99,

Defendants.

O R D E R

The court amends its opinion filed April 29, 2004, as

follows:

On page 8, footnote 6, in line 1 of paragaph 1 and lines 1 and 5 of paragraph 2:  the word "canons" replaces "cannons."

For the Court - By Direction,


/s/ Patricia S. Connor

Clerk

**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA ex rel.
KAREN T. WILSON,
           *Plaintiff-Appellant,*

v.

GRAHAM COUNTY SOIL & WATER
CONSERVATION DISTRICT; CHEROKEE
COUNTY SOIL & WATER
CONSERVATION DISTRICT; RICHARD
GREENE; WILLIAM TIMPSON; KEITH
ORR; RAYMOND WILLIAMS; DALE
WIGGINS; GERALD PHILLIPS; ALLEN
DEHART; LLOYD MILLSAPS; JERRY
WILLIAMS; BILLY BROWN; LYNN
CODY; BILL TIPTON; C. B. NEWTON;
EDDIE WOOD; GRAHAM COUNTY,
           *Defendants-Appellees,*

and

GRAHAM COUNTY BOARD OF COUNTY
COMMISSIONERS; CHEROKEE COUNTY
BOARD OF COUNTY COMMISSIONERS;
CHERIE GREENE; RICKY STILES; BETTY
JEAN ORR; JOYCE LANE; JIMMY ORR;
EUGENE MORROW; CHARLES LANE;
CHARLES LANEY; GEORGE POSTELL;
LLOYD KISSLEBURG; TED ORR;
BERNICE ORR; JOHN DOE; JOHN DOE
CORPORATIONS, and defendant;
GOVERNMENT ENTITIES 1-99,
           *Defendants.*

No. 03-1122

Appeal from the United States District Court
for the Western District of North Carolina, at Bryson City.
Lacy H. Thornburg, District Judge.
(CA-01-19-2)

Argued: October 28, 2003

Decided: April 29, 2004

Before WILKINSON, MICHAEL, and DUNCAN, Circuit Judges.

---

Vacated and remanded by published opinion. Judge Duncan wrote the
opinion, in which Judge Michael joined. Judge Wilkinson wrote a dis-
senting opinion.

---

## COUNSEL

**ARGUED:** Mark Tucker Hurt, Abingdon, Virginia, for Appellant.
Ben Oshel Bridgers, BRIDGERS & RIDENOUR, Sylva, North Caro-
lina, for Appellees. **ON BRIEF:** Brian S. McCoy, Rock Hill, South
Carolina, for Appellant. Scott D. MacLatchie, WOMBLE, CAR-
LYLE, SANDRIDGE & RICE, Charlotte, North Carolina; Jill
Hickey, NORTH CAROLINA DEPARTMENT OF JUSTICE,
Raleigh, North Carolina, for Appellees.

---

## OPINION

DUNCAN, Circuit Judge:

   Karen Wilson brought a *qui tam* action under the Federal False
Claims Act, 31 U.S.C. §§ 3729-3733 (2000) ("the FCA" or "the
Act"), alleging that her coworkers had submitted false claims to the
federal government in violation of the FCA and that she was con-
structively discharged in retaliation for reporting these activities.
Deciding that the six-year limitations period of the FCA did not apply

to the retaliation claim, the district court applied North Carolina's three-year limitations period for wrongful discharge actions and dismissed Wilson's claim as untimely. Because we conclude that the six-year limitations period of the FCA does apply to retaliation claims under the Act, we reverse the district court's dismissal and remand for further proceedings.

I.

Wilson is a former part-time secretary at the Graham County Soil & Water Conservation District ("the Conservation District"). On January 25, 2001, Wilson filed a *qui tam* action pursuant to § 3730(b) of the FCA, alleging that several of her former coworkers at the Conservation District had intentionally submitted false claims for reimbursement from three programs created or funded by the federal government. Wilson's complaint further alleged that after she reported her concerns in a letter to federal authorities, her supervisors and coworkers initiated a pattern of harassment that precipitated her resignation on March 7, 1997.

The Appellees moved to dismiss Wilson's claims under Federal Rule of Civil Procedure 12(b)(6). The Appellees argued that the FCA's statute of limitations did not apply to retaliation, and thus the timeliness of Wilson's claim should be controlled by North Carolina's three-year statute of limitations for wrongful discharge. The district court concluded that applying the FCA's limitations provision to retaliation claims could lead to absurd results, and that the timeliness of Wilson's claim should be controlled by North Carolina law. Agreeing with the Appellees that the closest analogous limitations period was the three-year period applicable to claims of wrongful discharge, *see* N.C. Gen. Stat. § 1-52(5) (1999), the district court concluded that the retaliation claim in Wilson's complaint of January 25, 2001, based on her constructive discharge of March 7, 1997, was untimely.

Wilson filed a motion for reconsideration of the statute of limitations issue. The district court denied Wilson's request for reconsideration, but certified its order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) (2000). We granted Wilson's timely petition for authorization to pursue this appeal.

II.

We review de novo the district court's order granting the Appellees' Rule 12(b)(6) motion to dismiss, *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002), as well as its statutory construction of the FCA, *see United States v. Jefferson-Pilot Life Ins. Co.*, 49 F.3d 1020, 1021 (4th Cir. 1995). It is axiomatic that when interpreting a statute, the starting point is the language employed by Congress, *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982), and where "the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms,'" *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)). In determining whether the language is plain, courts must look to "'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). If the language of the statute is ambiguous, in that it lends itself to more than one reasonable interpretation, our obligation is "to find that interpretation which can most fairly be said to be imbedded in the statute, in the sense of being most harmonious with its scheme and with the general purposes that Congress manifested." *Comm'r v. Engle*, 464 U.S. 206, 217 (1984) (internal quotation omitted). A departure from the literal text of a statute is also appropriate if "a literal application would frustrate the statute's purpose or lead to an absurd result." *Nat'l Coalition for Students with Disabilities Educ. & Legal Def. Fund v. Allen*, 152 F.3d 283, 288 (4th Cir. 1998) (quoting *Robinson*, 519 U.S. at 340).

Three sections of the FCA determine whether the timeliness of Wilson's retaliation claim is governed by the Act itself or state law. The FCA's limitations period, § 3731(b), provides that

[a] civil action under section 3730 may not be brought —

(1)    more than 6 years after the date on which the violation of section 3729 is committed . . . .

§ 3731(b)(1).[1] Section 3730 creates three causes of action arising

---

[1]Section 3731(b)(2) states that, in the alternative, a civil action under § 3730 may not be filed "more than 3 years after the date when facts

under the FCA: an action for compensation filed by the Attorney General, *see* § 3730(a); a *qui tam* action filed by an individual, *see* § 3730(b); and an action for retaliatory conduct predicated on identified protected activity, *see* § 3730(h). Section § 3729 creates and defines the parameters of liability for presenting a false claim to the Government. Hence, the effect of the language as written is to provide that an action under § 3730, which necessarily includes an action for retaliation under § 3730(h), may be brought no more than six years after the date on which the underlying violation was committed.

Both the retaliation provision of § 3730(h) and the limitations provision of § 3731(b)(1) are relatively recent additions to the FCA. Prior to 1986, the FCA did not specifically include a cause of action for retaliation. Section § 3731(b) stated simply that "'a civil action under Section 3730 of this title must be brought within six years from the date the violation is committed.'" *United States ex rel. Lujan v. Hughes Aircraft Co.*, 162 F.3d 1027, 1034 (9th Cir. 1998) (discussing the 1986 amendments). Congress's stated intent in amending the FCA was "not only to provide the Government's law enforcers with more effective tools, but to encourage any individual knowing of Government fraud to bring that information forward." S. Rep. No. 99-345, at 1-2 (1986) (hereinafter "S. Rep."), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5267. Toward that end, Congress also added § 3730(h),[2] which

---

material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed." However, because neither party advances this alternative limitations period as controlling, and "there is no 'official of the United States charged with responsibility to act in the circumstances' that are presented in a typical retaliation case," *Storey v. Patient First Corp.*, 207 F. Supp. 2d 431, 444 n.20 (E.D. Va. 2001), we limit our analysis to § 3731(b)(1).

[2]In full, this subsection provides that:

> "Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole."

§ 3730(h).

provides a remedy for any employee who "is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against" as a result of lawful acts by the employee in furtherance of an action under the FCA.

The proper interpretation of these provisions has divided both our sister circuits and courts within this circuit.[3] In *United States ex rel. Lujan v. Hughes Aircraft Co.*, the Ninth Circuit held that § 3731(b)(1) did not apply to retaliation claims under the FCA. 162 F.3d at 1034-36. The *Lujan* court reasoned that the 1986 amendments, "while adding a provision for retaliation claims under § 3730(h), narrowed the application of the six-year statute of limitations to violations of § 3729," such that the amendments "created the retaliation claim but provided no specific statute of limitations for such claims." *Id.* In view of this perceived absence of a congressionally prescribed statute of limitations, the Ninth Circuit concluded that "the most closely analogous statute of limitations under state law" must fill the void. *Id.* at 1035 (citing *Reed v. United Transp. Union*, 488 U.S. 319, 323 (1989)).

In contrast, in an earlier decision which the court in *Lujan* failed to distinguish or cite, the Seventh Circuit found no difficulty in applying § 3731(b)(1) to retaliation claims under § 3730(h). *See Neal v. Honeywell, Inc.*, 33 F.3d 860, 865-66 (7th Cir. 1994).[4] The employer in *Neal* made the same argument accepted by the district court (and propounded by the dissent). Expressing a concern for the rights of employees generally (although, similar to the dissent here, not the employee who filed the complaint at issue), the employer contended that § 3731(b)(1) could not apply to retaliation claims, as a literal application of its terms would lead to absurd results. The *Neal* court disagreed, concluding that the revised language of § 3731(b)(1) reflected Congress's decision to prioritize "simplicity of administra-

---

[3]*Compare Storey*, 207 F. Supp. 2d at 444 (applying § 3731(b)(1) to retaliation claims under § 3730(h)), *with United States ex rel. Ackley v. IBM*, 110 F. Supp. 2d 395, 401-05 (D. Md. 2000) (assuming, without deciding, that § 3731(b)(1) did not apply to retaliation claims under § 3730(h) for the reasons described by the court below).

[4]Like the court in *Lujan* on which so much of its reasoning relies, the dissent does not address *Neal* or its analysis.

tion," and that the employer had mischaracterized the consequences of a literal reading of the statute.[5] *Id.* at 865. Against this backdrop, we consider Wilson's contention that the district court erred in declining to apply § 3731(b)(1) to her retaliation claim under § 3730(h).

## III.

Starting, as we must, with the text of the FCA, we find no ambiguity undermining the conclusion that Congress intended the revised limitations period of § 3731(b)(1) to apply to all claims under § 3730, including retaliation claims under § 3730(h). We are unpersuaded that Congress's addition of language referring to "the date on which the violation of section 3729 is committed" was intended to exclude § 3730(h) from the ambit of § 3731(b)(1), and that the consequences of the resulting statutory scheme are not absurd, but are in keeping with the FCA's purpose.

The dissent, like the Appellees, argues that the text of § 3731(b)(1) "could not be more plain. The six-year period is tied to a 'violation of section 3729' and nothing else." *Post* at 20. As explored below, however, this assertion is demonstrably inaccurate. Section 3731(b) *could* have provided that a "civil action under section 3730(a) or (b) may not be brought more than six years from the date the violation of § 3729 is committed." This Congress did not do. Despite its Herculean effort, the dissent cannot disguise the fact that it is asking us to ignore what Congress expressly says: that an action under § 3730(h) protesting retaliation is "[a] civil action under § 3730."

## A.

The threshold inquiry when interpreting the text of a statute is whether the language at issue "has a plain and unambiguous meaning with regard to the particular dispute in the case," for if the language is unambiguous and the "statutory scheme is coherent and consistent," no further inquiry is required. *Robinson*, 519 U.S. at 340. Indeed, "[t]here is, of course, no more persuasive evidence of the purpose of

---

[5]The United States' brief in *Neal*, filed as an *amicus curiae* at the invitation of the court, "concluded that the statute supports Neal without a thumb on the scales of justice." 33 F.3d at 863.

a statute than the words by which the legislature undertook to give expression to its wishes." *United States v. Am. Trucking Assns., Inc.*, 310 U.S. 534, 543 (1940); *see also Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980) ("Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive."). A term in a section is ambiguous only if, when considered in the larger context of the statute as a whole, it is amenable to more than one reasonable interpretation. *Engle*, 464 U.S. at 217.[6]

---

[6]The dissent draws on two additional canons of statutory construction that we find to be inapplicable to this situation. The first is that "'[w]hen Congress alters the wording of a statute, we must presume Congress intended a change in the law.'" *Post* at 21 (quoting *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997). However, the authority cited by *Lackey*, *Brewster v. Gage*, 280 U.S. 327, 337 (1930), makes clear that this doctrine is relevant when Congress uses language "so differing from that used in the earlier act" that it could not but demonstrate Congress's intent to work a change in the law. The dissent's reliance on *Lackey* is circular, as the few newly added words on which it is predicated are so equivocal that we must discern Congress's intent from the remainder of the section and its context, as we have attempted to below; the simple fact of revision does not demonstrate intent, the text does. *See United States v. Sepulveda*, 115 F.3d 882, 885 n.5 (11th Cir. 1997) (finding the amended language of a statute to be "inconclusive" as to Congress's intent and analyzing the statute based on its plain language and legislative purpose).

The second is the canon "*expressio unius est exclusio alterius*"; that the explicit inclusion of one or more of an obvious set signals Congress's intent to exclude the remainder of that set. *See, e.g.*, *United States v. Vonn*, 535 U.S. 55, 65 (2002). As the dissent acknowledges, however, this canon is less a directive than a guide, *id.*, and in this instance the doctrine appears to be of dubious use. *Cf. Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 81-84 (2002) (identifying "statutory language suggesting exclusiveness" and an "established series . . . from which Congress appears to have made a deliberate choice" as two requirements that must be met in order to justify application of the "*expressio unius*" doctrine, neither of which are clearly present in the amended FCA).

B.

Applying these principles to sections 3730(h) and 3731(b), we conclude that § 3731(b)(1) plainly applies to retaliation claims under § 3730(h). As noted above, the text of § 3731(b) does not exclude § 3730(h). Rather, the language of § 3730(b) states broadly that it applies to "[a] civil action under section 3730." § 3730(b). Because Congress elected not to modify this language in 1986 while adding a third cause of action to § 3730, we conclude that Congress intended § 3731(b) to continue to apply to all actions under § 3730, including the newly added cause of action for retaliation.

In contrast, we find the Appellees' competing interpretation of § 3731(b)(1) to be unpersuasive, and for reasons in addition to the fact that it requires the eliding of a provision to which the language would otherwise apply. The Appellees point to the differences in the provisions of § 3730 to which the six year limitations period of § 3731(b)(1) appears to apply. The Appellees argue that § 3730(a), involving an action by the Attorney General, and § 3730(b), authorizing actions by individuals, are based entirely on violations of § 3729, whereas retaliation claims under § 3730(h) are not. They reason that because § 3731(b)(1) begins the limitations period on the "date on which the violation of § 3729 is committed," Congress cannot have intended § 3731(b)(1) to include § 3730(h).

This interpretation of the FCA is artificial, however, as § 3730(h) subsumes a violation of § 3729, even if it does not do so explicitly. By its terms, § 3730(h) protects any "lawful acts done by the employee on behalf of the employee or others *in furtherance of an action under this section*." *Id.* (emphasis added). Because an action under § 3730 will not lie absent an alleged violation of § 3729, it is clear that Congress has elected to identify a single, readily identifiable point at which to begin the limitations periods for all actions under § 3730. *See Neal*, 33 F.3d at 865 (noting the "simplicity of administration" afforded by the approach codified in § 3731(b)(1)). Indeed, as noted by Judge Easterbrook, "[i]t is easier to determine the date of a false claim than to pin down the time of retaliatory acts; the claim is a document, but arguments about retaliation depend on oral exchanges and are subject to failure of memory as well as the risk of prevarication." *Id.* Rather than signaling by implication Congress's

intent to exclude retaliation claims from § 3731(b)(1), the amended text of § 3731(b)(1) simply directs that the limitations period for retaliation claims under the FCA begins when the violation of § 3729, to which such violations of § 3730(h) must be tethered,[7] is found to have occurred.

C.

Even if it were unclear whether Congress intended the language of § 3731(b)(1) to apply to actions under § 3730(h), the review of the legislative history required by that ambiguity reinforces the conclusion that the section applies to retaliation claims under the FCA. In discussing the provisions created by the 1986 amendments, the legislative history discusses "a new section 3734 under the False Claims Act to provide 'whistleblower' protection." S. Rep. at 34, *reprinted in* 1986 U.S.C.C.A.N. at 5299. This new section was to "provide[ ] 'make whole' relief" for anyone discharged for engaging in activity protected under the Act, including anyone who is "'discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against.'" *Id.* However, no such completely new section was added. Instead, Congress added this provision to § 3730 as subparagraph (h). *See* False Claims Amendment Act of 1986, Pub. L. No. 99-562, § 4, 100 Stat. 3153, 3157-58 (1986).[8] Had § 3730(h) been enacted as a separate section as originally contemplated by the legis-

---

[7]Although we believe this fact to be self-evident, the dissent contends that the filing of a false claim in violation of § 3729 and a retaliatory discharge actionable under § 3730(h) are "independent" events, *post* at 18, an assertion we find puzzling. If an employee's termination is "independent" of a violation of § 3729 and the employee's decision to report it, at the very least, it would not be retaliatory. Alternatively, if the termination could fairly be described as "retaliatory," but could not be tied to the reporting of a violation of § 3729, it would be actionable not under the FCA and § 3730(h) but under Title VII or some other statute prohibiting employment discrimination. The events that trigger the statute of limitations may precede the final event that gives rise to an action for retaliation, *post* at 20, but that fact does not render the events "independent" of one another.

[8]In the version of the amendments proposed by the House of Representatives, the retaliation provision was to be included as § 3730(g). *See* H.R. Rep. No. 99-660, at 12-14 (1986).

lative history to the 1986 amendments, a claim of retaliation under the FCA would not constitute "[a] civil action under § 3730," and thus Congress's intent to have courts apply the most analogous state statute of limitations would be clear. *See Reed v. United Transp. Union*, 488 U.S. 319, 323-24 (1989). Hence, Congress's relocation of the retaliation provision to § 3730 reinforces the conclusion that Congress intended the six-year limitations provision of § 3731(b)(1) to apply. *Cf. Russello v. United States*, 464 U.S. 16, 23-24 (1983) ("Where Congress includes limiting language in an earlier version of a bill but deletes it prior to enactment, it may be presumed that the limitation was not intended.").[9]

## IV.

As an alternative basis to facial ambiguity for exempting Wilson's retaliation claim from the six-year limitations period of the FCA, the Appellees press the district court's conclusion that a literal application of the text of § 3731(b)(1) to retaliation claims under § 3730(h) would lead to absurd results. The Appellees posit two variations on this theme. The first arises from the fact that § 3731(b)(1) effectively begins the limitations period for retaliation claims before the act of retaliation occurs. The second arises from the Appellees' reading the term "violation" in § 3731(b)(1) to require an actual and substantiated violation of § 3729. We consider in turn whether either of these hypothetical situations constitutes an absurd result.[10]

---

[9]We note that *Lujan* did not consider this legislative history in concluding that "*[i]n the absence of some meaningful indication to the contrary*, we must therefore presume that, in amending section 3731(b) . . . Congress did not intend that the statute apply to section 3730(h)." 162 F.3d at 1035 (emphasis added).

[10]The dissent describes this discussion as an attempt to advance "a number of policy rationales to support [our] result." *Post* at 18. The dissent neglects to point out that these purported "policy rationales" are merely an exploration of the consequences that flow directly from the text of the FCA itself, and are offered to demonstrate only that the statute means precisely what the statute says. In contrast, the dissent offers a number of policy rationales for its competing construction of § 3731(b), which considers only a part of the language added by Congress in 1986. More importantly, the dissent's dissertation fails to demonstrate that any of the

A.

In support of their argument that § 3731(b)(1) may, in certain circumstances, foreclose a claim for retaliation before it accrues, the Appellees offer two specific examples. First, an employer may, if the whistle-blowing employee has reported a false claim that the employer submitted several years earlier, elect to wait-out the limitations period before terminating or otherwise retaliating against that employee. Or, an employee may report a § 3729 violation that is so old that the limitations period expires shortly after the employee reports the violation, effectively leaving the employee unprotected. However, neither result is necessarily absurd.

As a threshold matter, we note that statutes of repose have the same effect. Yet we find no absurdity in Congress's prerogative to limit the rights it creates in this manner. "Statutes of repose, increasingly common in tort cases, have the potential to block litigation before the tort occurs." *Neal*, 33 F.3d at 865. Assuming that this is indeed "what Congress had intended to accomplish by way of the limitation period contained in the False Claims Act, 'that would not condemn [those provisions] as absurd. It would show only that Congress had opted for simplicity of administration.'" *Storey v. Patient First Corp.*, 207 F. Supp. 2d 431, 444 (E.D. Va. 2001) (alteration in original) (quoting *Neal*, 33 F.3d at 865).

consequences identified here are absurd. Certainly, the arrangement that follows from the plain text of the § 3731(b) is a departure from the limitations periods generally applicable to claims of retaliation, and the dissent points out the merit of the usual scheme. Nevertheless, when Congress's intent to endorse the benefits and consequences of one statutory scheme over another is clear from the text of the statute, as we conclude it is here, "[t]he wisdom of Congress' action . . . is not within our province to second guess." *Eldred v. Ashcroft*, 537 U.S. 186, 222 (2003).

To the extent the dissent cannot fathom why "the majority go[es] to such extraordinary lengths" to resist his views, *post* at 23, we can only proffer our obligation to apply Congress's language as written. Congress has the discretion to designate the starting point for the running of the statute of limitations period it imposes. When it does so, as it has here, we do not feel it appropriate to substitute one we prefer. *Eldred*, 537 U.S. at 222.

Second, courts have recognized that there is, as a practical matter, a close temporal relationship between a protected act and the retaliatory conduct based on it. *See Neal*, 33 F.3d at 865-66; *Storey*, 207 F. Supp. 2d at 446 (citing *Grand ex rel. United States v. Northrop Corp.*, 811 F. Supp. 333, 336 (S.D. Ohio 1986)). As a result, there would be few instances in which several years would pass between the violation, the protected conduct, and the retaliatory act. Additionally, the length of the limitations period in § 3731(b)(1) lessens the likelihood that the purportedly absurd consequences advanced by the Appellees would occur. Moreover, the six years provided from the date of the violation should be sufficient to encompass the protected act and the retaliation, lest they both face challenges for attenuation and staleness.

Even assuming the hypothetical circumstances described by the Appellees occur, the doctrines of equitable tolling or equitable estoppel may provide relief. *Neal*, 33 F.3d at 866. These doctrines are "based primarily on the view that a defendant should not be permitted to escape liability by engaging in misconduct that prevents the plaintiff from filing his or her claim on time." *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987). In those instances where the employer has delayed a retaliatory termination until the statute of limitations has run, the employee's failure to file in timely fashion may fairly be described as "the consequence . . . of a deliberate design by the employer," such that the employer could be barred from raising the limitations period as a defense under the doctrine of equitable estoppel. *Id.* (internal quotation omitted).[11] Ultimately, the speculation

---

[11]As an additional matter, we note that none of the various potentially absurd outcomes identified by the Appellees' brief would arise under the facts presented in this case. This too counsels against adopting the Appellees' construction of the FCA here. This court's function in interpreting a statute is "to determine whether the language at issue has a plain and unambiguous meaning with regard *to the particular dispute in the case*." *Robinson*, 519 U.S. at 340 (emphasis added). While we are not convinced that any of the consequences advanced by the Appellees as a result of applying § 3731(b)(1) to retaliation claims under the Act are absurd, the fact that none of these consequences arise in the context of Wilson's retaliation claim reinforces our conclusion that these arguments in favor of applying the North Carolina statute should not be dispositive on appeal.

that a plain-text application of the FCA's amended language *could* yield an absurd result in a limited category of hypothetical cases stands in stark contrast to the decidedly unfavorable result that interpretation would have on the retaliation claim at issue here. The result which would flow from the interpretation advanced by the Appellees and the dissent would comport with neither Congress's stated intent in amending the FCA ". . . to encourage any individual knowing of Government fraud to bring that information forward," S. Rep. at 1-2, *reprinted in* U.S.C.C.A.N. at 5267, nor with the liberal interpretation to be accorded to remedial legislation, *Neal*, 33 F.3d at 862.

B.

Nor are we convinced by the Appellees' contention that, if courts must look to when "the violation of section 3729 is committed," applying § 3731(b)(1) to a retaliation claim under the Act would have the absurd result of withholding retaliation protection until an action under § 3730(a) or (b) proves that such a violation actually occurred. While subparagraph 1 of § 3731(b), when read in isolation, is susceptible to a reading that begins the limitations period with a proven violation rather than an alleged violation, *see Ackley*, 110 F. Supp. 2d at 402, we are not persuaded this construction is appropriate, particularly when read in the broader context of the FCA.

As a threshold matter, the Appellees' construction of "violation," even when read in isolation, arguably reduces § 3731(b)(1) to surplusage. If the term "violation" in § 3731(b)(1) is read to require a judicially substantiated violation of § 3729 as the Appellees contend, that provision could not serve as the limitations period for the very actions under § 3730(a) or § 3730(b) necessary to prove such a violation. So read, § 3730(b)(1) would not apply to any action under § 3730. Expanding the inquiry to include other provisions of the FCA reinforces the conclusion that the Appellees' reading of "violation" is inappropriate. In *Neal*, the Seventh Circuit concluded that § 3730(h) applied to retaliation claims even in the absence of a judicially vindicated violation of § 3729. *See* 33 F.3d at 863-64. It did so in light of the breadth of activities protected by § 3730(h), which includes supplying "information during the 'investigation' of a suit 'to be filed' in the future." *Id.* (quoting § 3730(h)). More importantly, *Neal* also concluded based on this language that it was inappropriate to read the

term "violation" as "a condition subsequent, necessary to perfect the protection for activities that were sheltered at the moment of their commission." *Id.* at 864. Rather, it should be assessed "according to how things stood at the time of the investigatory activity." *Id.*

We note too that the Appellees' interpretation of "violation" is equally incompatible with the fact that retaliation provisions do not generally require the plaintiff to engage in activity that is actually protected. An objectively reasonable "good faith" belief that the activity is protected is sufficient to satisfy the prima facie requirement for retaliation claims. *Cf. Peters v. Jenney*, 327 F.3d 307, 321 (4th Cir. 2003) (noting that in order to make out a prima facie claim of retaliation under the Civil Rights Act of 1964, a plaintiff need only demonstrate a subjective "good faith" belief that the activity she engaged in was protected that is objectively reasonable, rather than proving conclusively that the activity was protected as a matter of law). In light of the tension created by the Appellees' narrow definition of violation when considered in light of the other language in § 3731(b) and the FCA as a whole, we decline to apply that construction, as "its invocation would result in a construction of the statute which . . . is at odds with the language of the section in question and the pattern of the statute taken as a whole." *SEC v. Sloan*, 436 U.S. 103, 121 (1978).

V.

Finally, we are not convinced that applying § 3731(b)(1) to Wilson's retaliation claim would yield a result that is at odds with Congress's intent in amending the FCA. To the contrary, we find the purposes of the FCA are well-served by application of § 3731(b)(1) to retaliation actions under § 3730(h), for three reasons. First, as the Supreme Court recently noted, one of the intended effects of Congress's 1986 amendments to the FCA was to "enhance[ ] the incentives for relators to bring suit." *Cook County v. United States ex rel. Chandler*, 538 U.S. 119, 133 (2003). Significantly, we note that recourse to the generally shorter limitations periods provided by state law inherently affords employees less protection than the six-year limitations period of the FCA, as Karen Wilson's experience attests. While North Carolina's statute of limitations for wrongful discharge actions is three years, some state retaliation statutes provide for limitations periods as short as 180 days. *See, e.g.*, Tex. Health & Safety

Code Ann. §§ 161.132, 161.134 (Vernon 2002) (imposing 180-day period in which to file action alleging retaliation against health-care worker for reporting "conduct that is or might be illegal, unprofessional, or unethical and that relates to the operation of the facility"); *Grand*, 811 F. Supp. at 336 n.2 (noting terminating employer's contention that Ohio's 180-day limitations period governs retaliation claims under the FCA should § 3731(b)(1) not apply). Such an abbreviated limitations period may be too short for an employee to adequately marshal the evidence necessary to support a claim that her termination was predicated on protected activity. *Cf. Reed*, 488 U.S. at 323 n.2, 324, 326 (suggesting that a six-month limitations period provides insufficient time for an aggrieved union member to "identify[ ] the injury, decid[e] in the first place to bring suit against and thereby antagonize union leadership, and find[ ] an attorney"). Applying state law in lieu of the FCA's limitations period would undermine the very protection that Congress intended to confer by enacting § 3730(h). The dissent does not explain how the purposes of the FCA are served by subjecting either the present or future relators who seek to vindicate federal interests to the vagaries of a patch-work of state limitations periods, some as short as six months.

Second, the uncertainty inherent in the process of identifying which of several potentially applicable statutes in any given state is "most analogous" would further undermine the protection afforded by § 3730(h). To make this determination, courts must first "characterize the essence" of the plaintiff's claim, then decide which state statute provides "the most appropriate limiting principle." *Wilson v. Garcia*, 471 U.S. 261, 268 (1985). While we do not doubt the ability of the district courts to follow these considerations to their logical conclusion, we note the frequency with which states have enacted "multiple statutes of limitations for personal injury actions," and the difficulties that can arise in selecting which is most analogous. *See Owens v. Okure*, 488 U.S. 235, 241, 243-44 & n.8 (1989) (noting that in "States with multiple statutes of limitations for personal injury actions," it may be difficult to ascertain which is most analogous, and that courts of appeals had devised two different approaches when resolving this issue in § 1983 actions). The collateral litigation necessary to resolve this issue would exacerbate any uncertainty as to the time available for filing a retaliation claim, and thereby reduce the employee's incentive to report a violation of § 3729. *Cf. Reed*, 488 U.S. at 326

("Time-consuming litigation as to the collateral question of the appropriate statute of limitations for a § 101 claim . . . creates uncertainty as to the time available for filing, and it would not be surprising if the prospect of perhaps prolonged litigation against the union before ever the merits are reached were to have a deterrent effect on would-be § 101(a)(2) plaintiffs.").

Third, the Appellees overlook the additional uncertainty that choice-of-law issues would create for employees in deciding whether to report violations of § 3729. Reference to state statutes of limitations may require district courts to address choice of law issues in determining which state's law it must look to before selecting the appropriate state statute. *Cf. Ackley*, 110 F. Supp. 2d at 402-03 & n.7 (disagreeing with defendant's argument that Maryland's *lex loci delicti* choice-of-law rule applied and required recourse to New York's one-year limitations period, and collecting cases for and against proposition that the most analogous statute is to be identified from the forum state's code, rather than following an application of the forum state's choice-of-law rules). Forcing an employee to confront complicated choice-of-law issues in deciding what protection, if any, the FCA will provide should she disclose a violation of § 3729 further dilutes the incentive to report such violations that Congress intended to create by adding § 3730(h). The importance of this consideration is underscored by the legislative history of the 1986 amendments, which note that much of the fraud against the government is committed by large contractors with a presence in several states. *See* S. Rep. at 2-3, *reprinted in* 1986 U.S.C.C.A.N. at 5267. Hence, recourse to a single, consistent statute of limitations would be consonant with the purposes of the FCA.

VI.

For the foregoing reasons, we conclude that § 3731(b)(1) provides the limitations period for retaliation actions under § 3730(h). Accordingly, we vacate the district court's orders granting the Appellees' motion to dismiss Wilson's retaliation claim as time-barred as well as denying reconsideration of that dismissal, and remand for further proceedings consistent with this opinion.

*VACATED AND*
*REMANDED*

WILKINSON, Circuit Judge, dissenting:

I thank Judge Duncan for her fine opinion. This is not an easy case, and there exists a square conflict between the Ninth Circuit, *United States ex rel. Lujan v. Hughes Aircraft Co.*, 162 F.3d 1027, 1035 (9th Cir. 1998) (state statute of limitations for wrongful discharge applies to anti-retaliation claims under section 3730(h)), and the Seventh Circuit, *Neal v. Honeywell, Inc.*, 33 F.3d 860, 865 66 (7th Cir. 1994) (six-year statute of limitations in section 3731(b) applies to claims under section 3730(h)). In my judgment, the *Lujan* court advances the better interpretation of the False Claims Act, 31 U.S.C. §§ 3729-3733 (2000). The sole issue in this interlocutory appeal is whether the district court correctly held that North Carolina's three-year statute of limitations for wrongful discharge applies to complaints of retaliatory conduct brought under section 3730(h) of the FCA. For reasons expressed by both *Lujan* and the district court, I agree that the three-year limitations period applies.

My colleagues, by contrast, hold that under section 3731(b) an employer's submission of false claims commences a six-year statute of limitations for the independent event of retaliation against an employee. The majority thus introduces an unprecedented oddity into state and federal law by disconnecting the statute of limitations for anti-retaliation claims from the actual retaliatory acts themselves. The majority offers a number of policy rationales to support its result. But these rationales are found nowhere in the text of the FCA and rest on scant support in the legislative history.

The majority suggests its approach to the statute has this or that advantage, but I do not think it acknowledges adequately all the debits of its departure from the statutory text. Its approach fails to give employees adequate notice concerning when the statute of limitations begins. Worse still, it may preclude challenges to retaliatory acts under section 3730(h) before that cause of action has even accrued. The majority also undermines the entire basis for a statute of limitations by counseling judges to exercise equitable tolling powers to recognize claims whenever the drawbacks of its interpretation of the FCA become too apparent to ignore.

And, of course, six years is a long time. Deaths, departures, and forgetfulness can occur in such a period, and the relevant evidence

has often faded. That is not to say that Congress could not mandate such a period, only that it has not chosen a time frame so far in excess of analogous state provisions.

So I believe the majority is mistaken. In the absence of an express federal statute of limitations, the district court properly applied the statute of limitations for the most closely analogous state action of wrongful discharge. *See Reed v. United Transportation Union*, 488 U.S. 319, 323-24 (1989). North Carolina's three-year statute of limitations for wrongful discharge affords a whistle-blowing employee both adequate notice and a reasonable period of time to file anti-retaliation claims.

## I.

## A.

The starting point for our inquiry must be the text of the statute. The FCA's sole statute of limitations provision states:

> (b)   A civil action under section 3730 may not be brought —
>
> (1)   more than 6 years after the date on which the violation of section 3729 is committed, or
>
> (2)   more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,
>
> whichever occurs last.

31 U.S.C. § 3731(b). Since anti-retaliation claims under section 3730(h) are part of section 3730, my colleagues contend a plain reading suggests that the statute of limitations applies. But "[t]he answer is not so simple." *Lujan*, 162 F.3d at 1034.

Unfortunately, the majority's purported plain language interpretation lops off half the statute. It overlooks the fact that both prongs of the statute of limitations turn explicitly on events independent from any alleged retaliatory actions. This fact alone suggests that the statute of limitations does not apply to anti-retaliation claims.

The first statutory limitations period begins with the occurrence of a section 3729 violation. 31 U.S.C. § 3731(b)(1). The text of this provision could not be more plain. The six-year period is tied to a "violation of section 3729" and nothing else. Because an anti-retaliation claim does not involve a "violation of section 3729" but instead a violation of section 3730(h), by its own terms section 3731(b)(1) cannot apply. Section 3729 addresses only the submission of false claims to the federal government. Section 3729 does not address retaliatory actions by employers against whistle-blowing employees. Indeed, an employer may wrongfully retaliate against a whistle-blowing employee even in the absence of section 3729 violations, which would leave this statute of limitations without a starting point. Retaliation by an employer may also occur more than six years after the employer committed the false claims violations, which would leave the employee without a cause of action. Therefore, it seems incongruous to say the least that an employee's ability to bring retaliatory claims should turn on when or whether the employer has submitted false claims to the government in violation of section 3729. *See United States ex rel. Ackley v. International Business Machines Corp.*, 110 F. Supp. 2d 395, 401-03 (D.Md. 2000).

The second statutory limitations provision also has nothing to do with anti-retaliation claims under section 3730(h). *See* 31 U.S.C. § 3731(b)(2). This alternative statute of limitations commences on the date when federal officials charged with responsibility to act under the FCA knew or reasonably should have known material facts concerning the section 3730 claim. But this is a logical impossibility in the case of section 3730(h) claims. No United States official is responsible for anti-retaliation claims under section 3730(h), and no official can even file an anti-retaliation action on behalf of an affected employee. A whistle-blowing employee is the only individual empowered to bring challenges to retaliatory actions under section 3730(h). Therefore, it would seem impossible to link the statute of limitations for anti-retaliation claims to this provision.

In sum, applying either of the section 3731(b) limitations periods to section 3730(h) anti-retaliation actions is like cramming squares in circles. In neither language nor logic do they fit.

### B.

Prior to 1986, section 3731(b) stated that "[a] civil action under section 3730 of this title must be brought within 6 years from the date the violation is committed." 31 U.S.C. § 3731(b) (1982). This pre-1986 provision clearly established that a six-year statute of limitations applied to all section 3730 claims.

If Congress had retained this language when it added anti-retaliation actions to the FCA, then our job would be simple. But Congress in 1986 chose to amend the FCA, and we must "presume that language added by amendment was not mere surplusage." *Salomon Forex, Inc. v. Tauber*, 8 F.3d 966, 975 (4th Cir. 1993). Congress introduced in 1986 a cause of action for retaliatory acts under section 3730(h). Simultaneously, Congress revised the statute of limitations provision under section 3731(b) in two significant ways.

First, Congress narrowed the applicability of the statute of limitations to "violations of section 3729." *See* 31 U.S.C. § 3731(b)(1). If Congress had intended that a six-year statute of limitations apply to section 3730(h) anti-retaliation actions, it would not have made an employer's false claims violations the thing that starts the statute running. Second, Congress would not have added the alternative provision that the statute of limitations for section 3730 runs three years after an official knew or reasonably should have known of facts material to the right of action. *See* 31 U.S.C. § 3731(b)(2). Both of these changes mean that the statute of limitations applies only to section 3730 claims that concern the employer's false claims violations under section 3729 and not to challenges to retaliatory acts brought by an employee under section 3730(h). To decide otherwise suggests that this statutory change is meaningless and contravenes the well-established rule that "[w]hen Congress alters the wording of a statute, we must presume Congress intended a change in the law." *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997).

The majority asserts that "§ 3730(h) subsumes a violation of § 3729, even if it does not do so explicitly." Maj. op. at 9. This is an

implicit argument, and we do not interpret cross-references in statutes in this fashion. We must presume that when Congress incorporates statutory cross-references, it is careful in laying out the provisions to which the references occur. Here the references in section 3731(b) include section 3729, but do not include section 3730(h). When Congress includes one provision, it is safe to assume that it excludes others, absent evidence to the contrary. *Russello v. United States*, 464 U.S. 16, 23 (1983). While this principle may not serve as an infallible guide to statutory interpretation, it surely applies here.

My colleagues also point to a piece of legislative history, which indicated the Senate's initial intent to place whistle-blower protections under a separate section of the FCA. *See* Maj. op. at 10-11. The majority claims that the ultimate inclusion of challenges to retaliatory acts under section 3730(h) suggests that Congress somehow decided that section 3731(b) would establish the statute of limitations for these claims. This interpretation rests on a negative inference, and nothing affirmatively suggests that Congress added anti-retaliation claims to section 3730 with this purpose in mind.

In an effort to explain its conclusion, the majority states that Congress was, in effect, enacting a statute of repose. Maj. op. at 12. But, of course, Congress was doing nothing of the sort. Indeed, it is startling for the majority to suggest that Congress was bent, in the FCA no less, on establishing "repose" for employers who first defrauded the government and then moved against the very persons who brought that fraud to light. Section 3731(b) is self-evidently a statute of limitations.

The majority implies that when it picked the point to start the limitations period, Congress either did not know the difference between sections 3729 and 3730, or that it inadvertently neglected to include a reference to an immediately adjoining section of the statute. There is another explanation, however — namely that Congress did not include a reference to section 3730 because it did not wish to include such a reference. The actual statutory changes that Congress did enact underscore the point that Congress did not intend for section 3731(b) to apply to section 3730(h) claims. As the *Lujan* court held, "[i]n the absence of some meaningful indication to the contrary, we must therefore presume that, in amending section 3731(b) so that the limi-

tation runs only from the date of a violation of section 3729, Congress did not intend that the statute apply to section 3730(h)." *Lujan*, 162 F.3d at 1035.

## C.

The majority's interpretation is at odds with all statutes of limitations for wrongful discharge, which commence with the occurrence of the retaliatory acts. *See, e.g.*, N.C. Gen. Stat. § 1-52(5)(2003); Va. Code Ann. § 8.01-248 (2003); W. Va. Code § 55-2-12 (2003). By holding that the statute of limitations for anti-retaliation actions is set in motion by some independent event, rather than by the retaliatory acts themselves, the majority denies employees adequate notice of when they can bring a claim. Indeed, the majority's interpretation may fail to provide any notice *at all* to employees as to when their claims may commence or be foreclosed. There is a reason that statutes of limitations for anti-retaliation actions begin with the alleged retaliatory event. Because the retaliation bears adversely on the affected employee, it serves as the best possible notice that the employee may henceforth seek redress.

This same reason suggests why Congress did not mandate a six-year statute of limitations for section 3730(h) actions. Since false claims themselves are acts of deception, it makes sense for a longer statute of limitations to provide time to uproot the deception. But this is simply not a concern for employees under section 3730(h) who will feel the sting of the retaliatory actions at the moment they occur.

The matter seems almost second-nature. Statutes of limitations for personal injury claims begin to run on the date of the injury. Statutes of limitations for wrongful discharge claims begin to run on the date of the discharge. In an action challenging a wrongful act, the limitations period generally begins on the date of the act. In short, I am unable to understand why my friends in the majority go to such extraordinary lengths to resist such a thoroughly ordinary principle.

The majority's interpretation also casts uncertainty over the ability of affected employees to raise claims. For example, under its interpretation a whistle-blowing employee could report on his employer's submission of a false claim some five years or more after the claims

were submitted, yet be fired with apparent impunity just months later. The problem is thus that the existence of an independent trigger for the statute of limitations narrows the window of opportunity for affected employees to make challenges to retaliatory actions under section 3730(h). My colleagues summon judges to exercise their equitable tolling powers in such instances to override the limitations period in the interests of justice. But the idea that a statute of limitations could expire even before the cause of action comes into being is not one that we should jump to conclude that Congress intended to embrace. Reliance on equitable tolling in these circumstances undermines the value of having a statute of limitations in the first place and vests courts with unpredictable discretion with regard to late claims. The uncertainties of equitable tolling may make it more difficult for discharged whistle-blowers to secure legal representation. Lawyers may be reluctant to take on late challenges to retaliatory actions if there is only a chance that judges will exercise equitable tolling powers to recognize them.

The majority chides the dissent for manifesting a concern about future employees and not the employee in this case. But efforts to rescue a present plaintiff cannot justify creating problems for future plaintiffs that Congress did not intend. My colleagues respond to these problems with various policy pronouncements. The majority posits that Congress chose to have section 3731(b) apply to anti-retaliation actions under section 3730(h) to further "simplicity of administration." Maj. op. at 9-10. Nowhere in the statute or legislative history is Congress' desire for simplicity of administration articulated. Simplicity of administration is certainly not furthered by the majority's exhortation for judges to use equitable tolling. Nor is simplicity of administration advanced by the majority's discussion of what actually constitutes a "violation" of section 3729. Maj. op. at 14-15. In this connection, we are told we need not await a judicially determined violation, but what other than that might suffice to set the statute running is left unclear. And to have all this in the course of a discussion on administrative ease and convenience underscores the fact that the majority's interpretation will present us with anything but.

In support of its result, the majority claims there is generally a close temporal relationship between protected acts and retaliatory conduct, and that it is easier to know when fraud against the govern-

ment occurs than when retaliatory actions occur. Maj. op. at 9. These arguments are speculative. Whether false claims or retaliatory actions are easier to identify will depend on which claim or which action one happens to be talking about. And as for the "close temporal relationship between a protected act and the retaliatory conduct based on it," Maj. op. at 13, an employer, and especially one aware of the majority's limitations rule, could resolve not to "get mad," but in the longer run "to get even." The majority finally argues that "the length of the limitations period in § 3731(b)(1) lessens the likelihood that the purportedly absurd consequences advanced by the Appellees would occur." Maj. op. at 13. This too is hardly self-evident, because the discovery of false claims, predicated on deceptive practices, may not occur until late in the day. In all events, these sorts of judgments are legislative, not judicial in nature, and they afford no basis for ignoring the fact that Congress pegged the six-year limitations period to violations of section 3729, not section 3730(h), in the statute itself.

II.

"Congress not infrequently fails to supply an express statute of limitations when it creates a federal cause of action. When that occurs, '[w]e have generally concluded that Congress intended that the courts apply the most closely analogous statute of limitations under state law.'" *Reed*, 488 U.S. at 323 (quoting *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 158 (1983)). Since Congress enacted section 3730(h), but provided no statute of limitations, we must apply state law where the retaliatory actions took place. The North Carolina statute concerning wrongful discharge is the most analogous provision for a retaliatory discharge under the FCA. *See Renegar v. R.J. Reynolds Tobacco Co.*, 549 S.E.2d 227, 229 (N.C. Ct. App. 2001). The three-year statute of discharge should therefore apply and begin at the time the discharge in this case took place. *See* N.C. Gen. Stat. § 1-52(5) (2003). The challenge to the retaliatory action here occurs almost four years after this point and should thus be time-barred.

In applying state law, "'[i]t is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national polices.'" *Reed*, 488 U.S. at 324 (quoting *Occidental Life Ins. Co. of California v. EEOC*, 432 U.S.

355, 367 (1977)). Application of the state statute of limitations in this context would not "frustrate or interfere with the implementation of national policies" or "be at odds with the purpose or operation of federal substantive law." *North Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995) (internal quotations and citations omitted). In fact, this standard would make it easier for affected employees to challenge retaliatory actions, because they would at least know when they could do so. By contrast, the majority's interpretation leaves in the dark plaintiffs who seek to bring the dealings of those who defraud the government to light.

The majority points out that state statutes of limitations vary in duration and that a few states, such as Ohio, have a statute of limitations period for wrongful discharge as low as 180 days. But we are not thereby entitled to abandon the statutory text whenever a federal court perceives that a state steps "out of line." It is altogether plausible that Congress chose to respect both the diverse views of states on the length of limitations periods for wrongful discharge and the consensus view of states that such periods, whatever their length, should run from the date of the retaliatory acts themselves. Of course, Congress could provide a uniform time-period for these actions anytime it chooses to do so. But federal uniformity has never been thought an indispensable feature of federal law. *See, e.g.*, Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-2680. Other federal statutes, such as the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983, have required courts to identify the most analogous state causes of action and to apply state statutes of limitations to federal claims. *See Owens v. Okure*, 488 U.S. 235, 239-40, 245-48 (1989) (section 1983 actions are governed by state general or residual personal injury statutes of limitations); *see also Reed*, 488 U.S. at 326-27 (claims under § 101(a)(2) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 411(a)(2), prohibiting unions from interfering with members' right to free speech as to union matters, are governed by state general or residual personal injury statutes).

Any difficulties with applying state law suffer in comparison to the difficulties which the majority has created. In some cases, the majority's new rule may be clear, but in others it will cause uncertainty, and in still others it will discourage or prevent deserving whistle-blowers from having their day in court. Congress may deem it necessary and

appropriate to extend the time frame for anti-retaliation claims well beyond those which individual states provide. But until it does so, I would adhere to what I respectfully believe is its presently expressed intent.